IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALKEEN BROWN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1105 |
| | ) | Chief Magistrate Judge Amy Reynolds Hay |
| LEMASTERS CORRECTIONAL | ) | |
| SERGEANT; NELSON CORRECTIONAL | ) | |
| OFFICER; KERR CORRECTIONAL | ) | |
| OFFICER; OLINGER CORRECTIONAL | ) | |
| OFFICER, | ) | |
| Defendants. | ) | Re: Dkt. [51] |

**MEMORANDUM OPINION**

Walkeen Brown ("Plaintiff"), having been convicted of, inter alia, attempted murder and aggravated assault, is serving a lengthy sentence in the state prison system.  He has filed a prisoner civil rights action, alleging the use of excessive force twice on June 11, 2007.  Because, in his response to the Defendants' summary judgment motion, he has failed to adduce relevant evidence supporting his allegations, the Defendants' summary judgment motion is properly granted.

Plaintiff alleged in his complaint[1] the following: On June 11, 2007, at approximately 2:15 P.M., while taking a shower at SCI-Greene, he was ordered by Defendant Nelson to hurry up and get done.  Dkt. [16] at 4, ¶ 2.  Plaintiff then put his hands through the wicket or slot so as to get handcuffed; Plaintiff felt someone pull his arms through the "slot with force while putting the handcuffs on."  Id., at ¶ 3.  Once Plaintiff got out of the shower, Defendant LeMasters was allegedly "bending Plaintiff's right wrist in an upward position."  Id., at ¶ 6.  Rather than taking Plaintiff to his normal cell, he was taken to a hard cell or strip cell.  Id., at ¶ 8.  While Plaintiff was being escorted to the strip cell, Defendant LeMasters allegedly continued to bend Plaintiff's

---

[1] The Court notes that Plaintiff did not sign his complaint.

right wrist and Defendants Nelson and Olinger allegedly stepped on Plaintiff's shower shoe heels. Id., at ¶ 11. Plaintiff's water in the strip cell was allegedly turned off by Defendant Olinger. After Plaintiff was placed in the strip cell, Defendants allegedly twisted Plaintiff's wrist, with one of the Defendants holding Plaintiff's right forearm while the left handcuff was removed. Id., at 5, ¶ 14. Plaintiff then alleged that all three of the Defendants continued to pull on the Plaintiff's left cuff and bending his right wrist while Defendant LeMasters told the Plaintiff to stop resisting, when Plaintiff was allegedly not resisting. Id., at ¶ 15. Plaintiff complains that the three Defendants finally removed his right handcuff, "leaving him with a broken right wrist." Id., at 5, ¶ 16.

The second alleged use of excessive force is as follows. Later on the same day, i.e., June11, 2007, at around 3:30 P.M., Plaintiff complained to a nurse, making her rounds, that his right wrist was broken, telling her it happened because the guards were bending it while he was coming back from the shower. The nurse said she would have to return later. Around 4:45 P.M., Defendants Lemasters, Olinger, Nelson and Kerr allegedly approached Plaintiff's strip cell with one of them operating a video camera recorder, in order to escort Plaintiff to the medical unit. After Plaintiff was handcuffed, and taken out of his cell, Defendant LeMasters, allegedly "threw Plaintiff up against the wall with excessive force." Id., at 6, ¶ 26. Defendant LeMasters then allegedly whispered in Plaintiff's ear, "Now ther[e] isn't any cameras out here, if you say anything, we'll f___ you up." Id., at ¶27. Then as Plaintiff was being walked to the medical unit, Defendant LeMasters allegedly began to bend Plaintiff's right wrist again. Id., at ¶ 28. After arriving in the medical unit, the nurse asked him what was wrong and he allegedly told her that he was assaulted. Id., at ¶ 30. Plaintiff claims that the nurse noted Plaintiff's right wrist was swollen

2

and could not move.  Id., at ¶ 32.   Plaintiff was then escorted back to his strip cell by the four

defendants, and while being escorted, one of the defendants allegedly kicked Plaintiff in both of

his ankles, causing Plaintiff to fall.  Id., at ¶ 33.  When Plaintiff fell to the floor, one of the

Defendants allegedly grabbed Plaintiff's ankles and twisted it in a fast motion "causing it to

break."  Id., at ¶ 35.  After arriving back at the strip cell, Plaintiff was allegedly told by Defendant

LeMasters, if "you want to run you mouth, you won't eat, [and] I'll break your wrist more."  Id., at

7, ¶ 37.  The Defendants placed Plaintiff back in his strip cell while all of them allegedly pulled

Plaintiff cuffs and the tether attached to the cuffs bending his right wrist more.  Id., at ¶ 38.

Defendants then allegedly left Plaintiff in his cell in excruciating pain.  Id., at ¶ 39.

Plaintiff claims that the foregoing establishes his Eighth Amendment right to be free of

excessive force was violated.

**Procedural History**

After discovery was closed, Defendants filed a motion for summary judgment, Dkt. [51],

a brief in support, Dkt. [52], a concise statement of material facts, Dkt. [53], an appendix of

evidentiary materials, Dkt. [54], and a pretrial statement, Dkt. [55].   Thereafter, Defendants filed

two supplements to their summary judgment motion, Dkt. Nos. [56] & [57], both of which were

simply affidavits from two of the defendants that had been included in the appendix of evidentiary

materials but that had originally not been signed by the affiants; the supplements cured these

oversights.  The Court ordered Plaintiff to file a response by a date certain, Dkt. [58], but Plaintiff

failed to do so and so the Court issued a rule to show cause why this case should not be dismissed

for failure to prosecute, i.e., essentially for failing to comply with court orders.   Plaintiff filed a

response to the Order to Show Cause, Dkt. [60], which the Court treated as a motion for

appointment of counsel, and which the Court denied and directed Plaintiff to file a response to the

summary judgment motion by a date certain.  Dkt. [61].  On July 1, 2009, Plaintiff filed yet

another motion for appointment of counsel, Dkt. [62], and a response to the motion for summary

judgment, Dkt. [63], and a supplemental response, Dkt. [64].  Finally, Plaintiff also filed

evidentiary exhibits in opposition to the summary judgment motion, which consisted of: (1) two

private criminal complaints filed by a fellow prisoner in the state courts against guards at SCI-

Greene who are not the defendants herein, complaining of alleged mistreatment, and (2) a second

affidavit from a fellow prisoner at SCI-Greene complaining of alleged mistreatment at the hands

of guards, none of whom is one of the four defendants herein. Dkt. [65].  After being directed to

do so, Dkt. [66], Defendants filed affidavits from the custodians of records authenticating

documents that they had included in their appendix in support of the their summary judgment

motion.  Dkt. [68].   The motion for summary judgment is now ripe.

        The parties have consented to have the Magistrate Judge exercise plenary jurisdiction.

Dkt. [7] & [33].

        **Standard of Review**

        Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56(c).  Summary judgment may be granted against a party who fails to adduce

facts sufficient to establish the existence of any element essential to that party's case, and for

which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317

(1986).  The moving party bears the initial burden to show or point out why there is no genuine

4

issue of material fact.  <u>Walters ex rel. Walters v. General Motors Corp.</u>, 209 F.Supp.2d 481, 484

(W.D. Pa. 2002).  Once that burden has been met, the non-moving party must set forth "specific

facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as

presented by the moving party and judgment will be entered as a matter of law.  <u>Matsushita Elec.</u>

<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  In reviewing the summary judgment

evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on

those portions of the evidentiary record to which the nonmoving party directs its attention.  <u>See</u>

<u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 403 (6th Cir. 1992).

     "The substantive law governing the dispute will determine which facts are material, and

only disputes over those facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." <u>DeHart v. Horn</u>, 390 F.3d 262, 267 (3d

Cir. 2004)(internal quotations omitted).  An issue of material fact is genuinely disputed only if the

evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a

reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial."

<u>Matsushita</u>, 475 U.S. at 587.  The inquiry involves determining whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.  <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990).  If a

court, having reviewed the evidence with this standard in mind, concludes that "the evidence is

merely colorable . . . or is not significantly probative," then summary judgment may be granted.

<u>Anderson</u>, 477 U.S. at 249-50.  Moreover, it is not enough for the nonmovant to show that there is

some dispute as to facts, rather, "only disputes over facts that might affect the outcome of the suit

will prevent summary judgment." Anderson, 477 U.S. at 248.  Accord  Rexnord Holdings v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) ("[T]he mere existence of *some* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"); Dykes v. DePuy, Inc., 140 F.3d 31, 36 (1st Cir. 1998) ("summary judgment is not precluded by just any factual quibble").

In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.  See, e.g., Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001)(summary judgment "is the . . .  moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.").

**Discussion**

The Defendants have moved for summary judgment, claiming that Plaintiff has failed to meet the standards for showing a violation of his constitutional rights.  For the reasons discussed below, the motion will be granted.

Plaintiff's complaint is brought pursuant to Section 1983 of the Civil Rights Act.  In order to

> make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted).  Defendants do not dispute that they act under color of state law.  Hence, the only two remaining inquiries are

6

whether there is a material factual dispute with respect to a violation of Plaintiff's rights and whether the Defendants caused that violation.

The claim made by Plaintiff is that his Eighth Amendment right to be free from the use of excessive force was violated by the Defendants.  The landmark Supreme Court case in the Eighth Amendment excessive force area is <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).  The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Id.</u>  at 6-7.  In doing so, the Court jettisoned the traditional objective prong inquiry for establishing an Eighth Amendment claim.  <u>See id.</u> at 22-23 (Thomas, J., dissenting), wherein Justice Thomas wrote:

> In the context of claims alleging the excessive use of physical force, the Court then asserts, the serious deprivation requirement is satisfied by no serious deprivation at all.  'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.'  <u>Ibid.</u>  Ascertaining prison officials' state of mind, in other words, is the *only* relevant inquiry in deciding whether such cases involve cruel and unusual punishment. . . . The sum and substance of an Eighth Amendment violation, the Court asserts, is  'the unnecessary and wanton infliction of pain.'  This formulation has the advantage, from the Court's perspective, of eliminating the objective component.

(some citations omitted and quotation marks modified).  <u>Accord</u> <u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir. 2000)("In <u>Hudson</u>, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other.   Although the former kind of claim cannot survive without evidence that a deprivation was 'harmful enough' . . . , the latter kind of claim has no such requirement").

Accordingly, to establish an Eighth Amendment excessive force claim, the plaintiff must only

adduce evidence that the force used was applied not in a good-faith effort to maintain or restore

discipline, but maliciously and sadistically to cause harm.[2]

The four defendants filed affidavits, indicating that as to the first incident occurring in the

shower, the following in fact occurred: Plaintiff was in the shower.  Defendant Nelson gave

Plaintiff three orders to come to the shower door to be handcuffed and Plaintiff responded, "I will

cuff up when I'm f - - - - ing done."  When Plaintiff finally did come to the shower door and place

his hand through the wicket, Plaintiff grabbed Defendant Nelson's left hand and tried to pull

Nelson's arm inside.  At the time, Defendant LeMasters was at the door and assisted in restraining

Plaintiff.  Dkt. [56-2] at 1, ¶ 4. This was corroborated by Defendant Olinger, Dkt. [57-2] at ¶¶ 4 -

5; and by Defendant LeMasters, Dkt. [54-2] at ¶¶4 - 5.  These three Defendants also attested that

while escorting Plaintiff to the strip cell, no further force was used.  Dkt. [57-2] at 2, ¶ 5; Dkt.

[56-2] at 1 to 2, ¶ 5; Dkt. [54-2] at 2 to 3, ¶ 5.  These affidavits were sufficient to establish that the

force used by Defendants to gain control of Plaintiff's hands by cuffing them after he attempted to

---

[2] This is not to say that a fact finder at trial must disregard the extent of the injuries suffered by a
plaintiff.  As the Supreme Court observed in Hudson:

> Under the Whitley approach, the extent of injury suffered by an inmate is one factor that
> may suggest 'whether the use of force could plausibly have been thought necessary' in a
> particular situation, 'or instead evinced such wantonness with respect to the unjustified
> infliction of harm as is tantamount to a knowing willingness that it occur.'  475 U.S. at
> 321.   In determining whether the use of force was wanton and unnecessary, it may also
> be proper to evaluate the need for application of force, the relationship between that need
> and the amount of force used, the threat "reasonably perceived by the responsible
> officials," and "any efforts made to temper the severity of a forceful response."  Ibid.
> The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but
> does not end it.

Hudson, 503 U.S. at 7.

grab Defendant Nelson's arms was not malicious and also that no additional force was used against Plaintiff during the escort to the strip cell.  In addition, the Defendants appended evidence indicating that Plaintiff was charged with a disciplinary misconduct in connection with his refusal to get out of the shower when ordered and with assaulting a corrections officer and that Plaintiff was found guilty thereof.  Dkt. [54-2] at 59 to 61.  In light of the fact that the Defendants met their initial summary judgment burden, the burden then shifted to Plaintiff to set forth "specific facts showing that there is a <u>genuine issue for trial</u> . . . ."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. at 587.

In response, Plaintiff offered only arguments, <u>see</u>, Dkt. [63] and [64] none of which establishes that Defendants are not entitled to summary judgment.  The affidavits of fellow prisoners referred to earlier, which do not concern Plaintiff and the incidents of June 11, 2007 nor any of the defendants in this suit, are simply irrelevant and do not establish any dispute of material fact.

The same may be said for the later alleged use of excessive force in escorting Plaintiff to and from the medical unit.  The four Defendants in each of their affidavits indicated that at no time was force used against Plaintiff either to or from the medical unit.  Dkt. [54-2] at 3, ¶ 7; Dkt. [54-2] at 5 to 6, ¶ 6; Dkt. [57-2] at 2, ¶ 6.  Indeed, contrary to what Plaintiff alleged in his complaint, Dkt. [16] at 6, ¶ 26, it appears that Defendants LeMasters and Nelson were not even present for the escort of Plaintiff to and from the medical unit.  Dkt. [54-2] at 3, ¶ 6 ("I [i.e., Defendant Sergeant LeMasters] ordered CO's Olinger, Shultz and Kerr to escort Brown to triage.").  <u>See</u> <u>also</u> Dkt. [56-2] at 1 -2 (affidavit of Defendant Nelson, making no mention of being involved in the escort to the medical unit).   In addition, the Defendants offered medical evidence

9

to show that although Plaintiff's "right wrist has red marks from cuffs – no swelling or bruising noted.  Good ROM [range of motion].  No open wounds noted.  No deformities noted."  Dkt. [54-2] at 33 (nurse's medical incident/injury report, dated 6/11/07at 4:25 p.m.).   In addition, on June 19, 2007, x-rays of both of Plaintiff's wrists and ankles were obtained showing "no evidence of fracture or other recent acute traumatic osseous or joint pathology is seen."  Dkt. [54-2] at 70.  Again, this was sufficient to meet the Defendants' initial summary judgment burden to show no dispute over a material fact and hence, sufficient to shift the burden to Plaintiff to come forward with whatever evidence he has to show that a jury could reasonably find for him on each element of his case.

Again, Plaintiff offered only his arguments and the irrelevant affidavits from his fellow prisoners.  This was insufficient to meet his burden.

Hence, the summary judgment record taken in alight most favorable to Plaintiff establishes that there is no genuine issue of material fact and the four Defendants are entitled to summary judgment as a matter of law.

In the alternative, the Defendants are entitled to summary judgment based upon Local Civil Rule 56 governing Motions for Summary Judgment.  The Defendants filed their Statement of Material Facts not in dispute.  Dkt. [53].   According to Local Rule 56.C.1,[3] Plaintiff was

---

[3]  That local rule provides as follows:

**A Responsive Concise Statement:** A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:

   (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;

   (b) setting forth the basis for the denial if any fact contained in the moving party's  Concise Statement of Material Facts is not admitted in

10

required to file a responsive statement of material facts denying or admitting each of the

numbered paragraphs in the Defendants Statement of Material Facts.   Plaintiff failed to comply

with the Local Rule by failing to file a corresponding responsive concise statement of material

facts denying or admitting the numbered paragraphs in Defendants's concise statement and,

consequently, failed to cite to specific portions of the record in support thereof.   Such justifies the

Court in deeming the Defendants' Statement of Material Facts admitted by Plaintiff.  See, e.g.,

Bronson v. White, NO. 1:05-CV-2150, 2007 WL 3033865, at *1 n.1 (M.D.Pa. Oct. 15, 2007)

("Although Plaintiff has denied certain paragraphs of the Defendants' Statement of Material

Undisputed Facts, he has not pointed to record evidence to support such denials. Therefore,

pursuant to Local Rule 56.1, those material facts are deemed to be admitted."); Ferace v. Hawley,

NO. CIV.A. 05-1259, 2007 WL 2823477, at *1 (W.D.Pa. Sept. 26, 2007) ("Defendants set forth a

concise statement of material facts. [DE 60]. Plaintiff, however, failed to respond to these

statements in accordance with LR 56.1(C) (1), and consequently, the facts set forth in the concise

statement of material facts submitted by Defendants are deemed to be admitted by Plaintiff for the

purpose of the instant motion, in accordance with LR 56.1(E)").  On this basis alone, given that

we can deem the Defendants' statements of material facts undisputed, the court grants the

---

its entirety (as to whether it is undisputed or material), with appropriate
reference to the record (See LCvR 56.B.1 for instructions regarding
format and annotation); and . . . .

Local Rule 56.B.1 provides in relevant part that

The facts set forth in any party's Concise Statement shall be stated in separately
numbered paragraphs. **A party must cite to a particular pleading, deposition, answer
to interrogatory, admission on file or other part of the record supporting the
party's statement, acceptance, or denial of the material fact**;

(emphasis added).

11

summary judgment motion since the moving Defendants have met their initial summary judgment

burden to show no genuine issue of material fact.

Hence, for either of the two foregoing reasons, the summary judgment motion of the

Defendants will be granted.

An appropriate Order follows.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 10 September, 2009

cc:     Walkeen Brown
        GS-8970
        175 Progress Drive
        Waynesburg, PA 15370

        All counsel of record via CM-ECF

12